Good morning, Your Honors. My name is Stephen Babcock. I'm an Assistant Federal Defender for the District of Montana. I represent the appellant in this matter, Scott Stephen Reidy. I would like to reserve three minutes for rebuttal. There was no reasonable suspicion in this case that could have formed the basis of particularized suspicion to conduct the investigatory stop by Deputy Smith. There was a suppression hearing on this matter and three law enforcement officers testified. Detective Robinson testified as part of the surveillance team on this case that he thought or he believed that the rear license plate light was not illuminated when he passed the vehicle on the interstate. He also testified that as an experience as a patrol officer, it was difficult to determine whether or not a rear license plate light was illuminated when you're driving directly behind a vehicle and your headlamps are illuminating on the rear license plate light. That was Detective Robinson's testimony. Detective Deputy Smith, who actually conducted the investigatory stop, relayed this information from Detective Sillinger, who was part of the surveillance team. He was sitting in the median on the interstate and he was told this 2002 Chevy Tahoe that was driven by Mr. Reedy was going to pass him. It was about 830 at night. It went past him at 75 miles an hour. Montana law requires that a rear license plate light be illuminated up to 50 feet from the rear of the vehicle. Deputy Smith testified that he was able to determine that rear license plate light was not illuminated. As I indicated the district judge find that testimony credible. Yes. The district court judge stated that Deputy Smith testified that that the rear license plate light was not illuminated. Well, he also the district court seemed to focus on the legibility. It said that evidence of light was working doesn't contravert testimony that those two officers could not read the license plate within 50 feet. So the district court seemed to be focusing on the testimony of both Officer Robinson and Smith, that they couldn't read the license plate within 50 feet, which is required by the state statute. So it was not focusing on the illumination. So does the illumination, yes or no, make any difference in light of the district court's ruling? Well, I think the way that the Montana code annotated reads is that the license plate light has to be illuminated up to 50 feet in order to read the numbers. It says it must render it clearly legible from a distance of 50 feet to the rear. Even if the tail lamps were working, if the officers testified they couldn't see the the license within 50 feet, it doesn't really matter whether they were working or not. Correct. I mean, there has to be a reason for a valid traffic stop. Obviously, it is our opinion that this is entirely a ruse that there wasn't a traffic violation in this particular case. But if the district court and the magistrate judge credited the testimony that they couldn't see it within 50 feet, is there evidence in the record that they could see it within 50 feet? Well, I think there's evidence that contradicts the testimony from the law enforcement officers that should bring their testimony into question. And I think that's all supported by the video. It's our role to question, though, the findings of the district judge, even though there may be evidence on the other side of the ledger. Is there not substantial evidence to support the district judge's findings? I think that in my argument, there isn't. I strongly believe that when you take a look at the video in this particular case, and I would point directly as tied into the testimony of Detective Schillinger, who testified that he was not in a position to ever see whether or not the rear license plate light was illuminated. But he did after the fact, after the car was impounded and Mr. Reedy was put into custody, he was able to take a look at the rear license plate light and determine that it wasn't working. But even if it was illuminated, if they couldn't see it from a 50 foot distance, it's still a violation of that state code provision, isn't it? It is, but our argument is that the video clearly shows that that testimony from the law enforcement officers is not credible. I looked at the video and I couldn't see what the license plate number was, but I don't know how far away the car was at the point of the video. So are you saying that if I went back and looked at the video, I would be able to read the license plate? It's hard for me to determine whether you can or cannot from watching the video. Our argument is that the evidence that we also submitted, that the invoice from the mechanic and also the pictures taken by Mr. Reedy support the fact that the rear license plate light was working properly and was working properly underneath Montana law. But even if we credited that, all the receipts said was they were working, but if they were covered with dirt or whatever it was, and it wasn't illuminating the plate so that the officers could see it, which the magistrate judge and district court found them credible, it's hard for me to see why even if there was evidence that they weren't not working, that that's a clear error on the district court's part. Well, I guess in taking a look at it, we don't believe the testimony was credible. So that's what we're calling into question. And I do believe that it's certainly some credibility determinations on an appellate review. Well, if we take a look at the evidence that's put in the record with what they testified to and what is shown on the video, if you take a look at 2028 on that video, you can clearly hear Deputy Smith tell Scott Reedy to get out of the vehicle and turn off his vehicle. When he does do that, we see the tail lamps turned off. We see the headlamps go off. This is clearly visible by the video. Then we have testimony from Deputy Smith and from Detective Schillinger that after that they saw the rear license plate light wasn't working. It's impossible. You don't have to be a certified mechanic to know that when you turn off your lights, your rear license plate light is also extinguished. So I think there is, with the record that we have supported, shows that there is question with the testimony that was supported, that was put forth by law enforcement officers. Also, when we take a look at what was said by Detective Schillinger, or excuse me, Deputy Smith, when he pulled the vehicle over, the first thing that he told him was, I pulled you over because your rear license plate light wasn't working. Then he immediately goes into full-on investigative mode. For the real reason for the stop was that there was surveillance based upon this drug case and they had set up this wall stop. At no other point in the video does Deputy Smith investigate that rear license plate light. At no other time does he give him a warning. Does he write him a ticket? Does he do anything to that matter? Doesn't, didn't the Supreme Court tell us that that doesn't really matter in Wren? It doesn't matter what his, the subjective motivations of the officer was? Well, I think we also have to take a look at the totality of the circumstances to determine whether or not there was a valid reason for the stop. And when we take a look at everything, we do not think that there was reasonable suspicion for the stop. Moving on to what the government has of the collective knowledge. If this court finds that there is no particularized suspicion to conduct the investigatory stop, I would ask for remand in taking a look at what the district court did in upholding the magistrate judge's findings and recommendations. It states that having found that reasonable suspicion existed for the traffic violation, which we obviously object to, in the first instance, it is unnecessary to disagree with Judge Osby's application of the collective knowledge doctrine. So, in my opinion, the Article III judge, the district judge, did not uphold the magistrate judge findings. So if there is no finding of particularized suspicion, I ask for remand to see if the collective knowledge doctrine applies. Thank you. Thank you, counsel. Good morning. Lori Sook for the United States. In order for the court to reverse and decide that this motion to suppress should have been granted, you have to find that the magistrate judge in the district court committed clear error in the findings of fact that were made. And in this case, the court credited the testimony of the officers. Judge Acuti, you have pointed out an issue that actually we really didn't flesh out during the district court proceedings, but it's very intertwined with the illumination of the light bulb. Certainly, you are correct. The testimony of the officers was that they could not read the license plate for a distance of 50 feet. And that is a violation of the statute as it is intertwined with the illumination. The testimony that we focused upon in the district court, which walks hand in hand with that, is that the officers couldn't see that the plate was illuminated. And the issue that counsel brings up regarding after the fact, when they looked at the license plate and looked at the lights to determine whether, in fact, what Deputies Robinson and Smith had seen was accurate, it really wasn't resolved as to whether the car was on or off. That was something that was raised in the briefing after the fact, not at the time. And so that's exactly what the magistrate court found, that I don't know exactly what the argument is basically, whether it is they're saying that the officers, the video was still running when they looked or after the fact. But the bottom line is that the district court credited the testimony of Robinson and Smith, who were the driving deputies, that they could not read the license plate because it wasn't illuminated, and then credited the testimony of Deputy Schillinger, that after the fact, the lights were not working. And the contrary evidence that was presented by the defendant could easily be discounted by the district court. The photographs were not dated. So the invoice was the day after the defendant had picked up his car, and the district court found that the lights could have been fixed. Now, the defendant testified he did not fix the lights, but it is the job of the district court, the magistrate judge here was in that role of deciding who was credible. And she chose to believe the three law enforcement officers. So you would have to find clear error in her findings. But in the alternative, we do believe that there is a basis under the collective knowledge doctrine for this stop. What do we do with the fact that the district court didn't reach that issue? It wasn't raised in the briefing. We believe that issue is waived. But I don't believe it means anything with respect to the case, because the district court just believed that the basis for the stop, the traffic violation, there was not clear error in those findings, and there was no need to reach it. Certainly the district court didn't make as detailed findings about that part of the magistrate judge's ruling as with the traffic violation, but certainly did, found no need to quarrel with it. Were there factual disputes, or was it just whether the undisputed facts arose to collective knowledge? That's exactly right, Judge Akuta. Whether those facts rose to collective knowledge. Whether it was, then that collective knowledge enough to establish reasonable suspicion. It wasn't that there were specific facts that were wrong, like, you know, Roselle wasn't a drug dealer, or Reedy wasn't coming from Seattle, or there wasn't a tracker, or they didn't have an investigation ongoing. Those facts weren't disputed. It was simply that they didn't rise to the level of reasonable suspicion. In this case, we're, quite frankly, right down the middle of the road with respect to Wren and all of the case law that has come after it. Law enforcement officers can do this. These officers call it a wall stop. The law calls it a pretext, but in order to safeguard their investigation, which is what they testified they were doing, they asked for Deputy Smith's help. And yes, they were investigating a drug case, and yes, they were not wanting to tip their hand at that point, because certainly the people they were investigating weren't in custody. There's nothing wrong with that. So for the purposes of this case, we asked the court to, of course, uphold the ruling of the district court, because no clear error was committed here. But there was reasonable suspicion for this stop in many different ways. Okay, thank you. I guess the reason why we brought up the fact that the lights were turned off after Mr. Reedy was taken from his vehicle, based upon the commands of Deputy Smith, is because you can clearly see on the video that the lights are turned off. And then you have the testimony for Detective Schillinger that says that after Reedy was taken from the scene that he was able to see that the lights weren't working. Of course they weren't working. The vehicle was turned off and the lights were on. No lights were on. In taking a look at the collective knowledge, I find it interesting that the entire objective was for the wall stop, and to find a traffic violation. But then the argument is that we didn't have the collective knowledge of what was going on in our drug investigation. They didn't even know who was driving the car. But that's not necessary if they have sufficient probable cause, sufficient reasonable suspicion to stop the car. They don't need to know who's in there. Well I will tell you this, when you take a look at exactly what they had, that vehicle tracker was put on for less than 24 hours. What you have is the magistrate court's findings that it's not ordinary for an individual to drive across the northern Rockies in the winter, stay in Seattle for a day, and then drive back to Montana. It might not be ordinary, but that certainly doesn't meet the definition of what is required, even underneath the collective knowledge doctrine, for reasonable suspicion. Well they also know that it was registered to a drug distributor, and that the drug distributor who was on probation had dropped out of sight, and that the car had left from a stash house, a house that they knew was being used for sales. So why doesn't that, along with the rest of the information, give them reasonable suspicion? Well I would say that, first of all, in regards to this wasn't a probation stop. At no time has that ever been alleged by the government or by any testimony from law enforcement officers. That's not what occurred on this particular case. We also know that in taking a look at all of the cases, Ramirez, Jensen, everything that flows from the collective knowledge doctrine, that is the reason they stopped the vehicle. We also have the testimony from Detective Robinson and Detective Schillinger that said if there wasn't a traffic violation, they would have let the vehicle travel right to Billings. That was, the testify was strategic so as to not tip their hands, right? Yeah, so they certainly weren't going to conduct a stop based upon collective knowledge.
judges: Selna, Paez, Ikuta